NOTICE

Decision filed 12/09/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190382-U

NO. 5-19-0382

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| COUNTRY MUTUAL INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 15-MR-285 |
| | ) | |
| JONATHAN LITTLE, | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WHARTON delivered the judgment of the court.
Presiding Justice Boie and Justice Moore concurred in the judgment.

**ORDER**

¶ 1   *Held*: Where Jonathan Little presented genuine issues of material fact of the existence of a phantom driver who struck the front end of his vehicle, we reverse the trial court's summary judgment.

¶ 2   Jonathan Little appeals from the trial court's order granting summary judgment in favor of Country Mutual Insurance Company (Country Mutual). He asks this court to examine the record as he contends that there is a genuine issue of material fact regarding contact with the phantom vehicle that would be consistent with Country Mutual's policy definition of an uninsured vehicle. For the reasons stated in this order, we reverse and remand.

1

¶ 3                                    I. BACKGROUND

¶ 4     On August 18, 2015, Country Mutual filed its complaint for declaratory judgment against Jonathan Little (Little) and Madie Little (Madie) asking the court to declare that it did not owe uninsured motorist coverage to Little resulting from a motor vehicle collision that occurred on March 24, 2015, in St. Clair County. Madie was the owner of the vehicle and is Little's sister. Little was a permissive user of Madie's vehicle. Little claimed that he was driving Madie's vehicle when he was cut off and struck by another vehicle, and after taking evasive action, he struck a concrete railroad overpass. According to Little, the unknown vehicle fled the scene. This phantom vehicle and its driver have never been located and/or identified. As a result of this accident, Little alleges that he sustained bodily injuries. He sought coverage for his injuries and damages from Country Mutual's uninsured motorist coverage.

¶ 5     Country Mutual contends that there was no physical contact between Little's vehicle and the alleged phantom vehicle. Because there allegedly was no contact, Country Mutual asked the trial court to declare that it did not owe Little any uninsured benefits. With no physical contact between the two vehicles, Country Mutual argues that there was no "hit-and-run vehicle" if there was no contact, and thus there is no "uninsured motor vehicle."

¶ 6     In support of Country Mutual's claim that there was no physical contact between the two vehicles, Country Mutual points to the police report and photographs of the vehicle. The Illinois State Police report prepared by Officer Erica Lavalle indicates that she found no paint transfer from the phantom vehicle onto the vehicle operated by Little.

2

Country Mutual also contends that the photographs of the vehicle do not reflect paint transfer or other damage that could have been caused by the alleged phantom vehicle's sideswiping.

¶ 7    The Illinois Motorist Report prepared by Little and sent to the Illinois Department of Transportation (IDOT) indicates that after the accident a "trooper" arrived at the scene. Little stated that he did not know if the officer investigated the incident because he was at the hospital at the time the officer was at the crash site. Little's narrative of the incident is as follows:

> "I was driving on Rt[.] 13 at night in the rain in Car #1 [Little's vehicle] on a 45 mph road. I slowed down to 30 and 35 mph in the curve do [*sic*] to rain. Car #2 came up behind me at a fast speed [and] slowed down [and] drove behind me until I reached the straight away area on Rt[.] 13, then Car #2 speeded [*sic*] up[,] passed me[,] cut in on the front of my car making contact with Car #1['s] front end. Car #2 passing me was right of the train overpass. Immediately when Car #2 hit my car[,] I braked and swerved making me in Car #1 come into immediate contact with the train overpass. The car or Car #2 was know [*sic*] where in sight when my vehicle came to a stop. All I could remember was a chrome or silver bumper. I didn't know the overpass was there until I felt the crash. (I slowed down for road condition in Car #1. Car number 2 maybe thought I was going too slow.)"

¶ 8    On February 4, 2016, Little entered his *pro se* appearance and filed a motion to dismiss Country Mutual's declaratory judgment complaint. In this motion, he argued that there were other possibilities for contact other than damage to the side of the vehicle. He stated that, in his initial statement to Officer Lavalle and in his IDOT report, he indicated that the contact was to the front end of the vehicle as opposed to the side. Attached to this motion to dismiss were photographs of the front-end damage to Madie's vehicle. Little filed a counterclaim on February 2, 2016, seeking uninsured motorist benefits. These

3

photographs were taken after the accident and appear to reflect damage to the driver side front headlight cover.

¶ 9     Little filed a document with the court, entitled, "Uncontested Facts," on March 18, 2016. In this document, Little alleged that the damages to Madie's vehicle were on the front end, and not the side of the vehicle. He stated that he gave Country Mutual a recorded statement, during which the representative told him that there was $5000 in medical coverage on Madie's motor vehicle insurance policy. At some point, Little hired the Reed & Bruhn law firm in Belleville to represent him on this uninsured motorist claim. Country Mutual sent Reed & Bruhn a check in the amount of $4860.50 in settlement of the medical coverage claim.[1]

¶ 10    On April 8, 2016, Little filed a *pro se* motion to file affidavits to support his motion to dismiss Country Mutual's complaint. On the same date, two affidavits were independently filed with the circuit clerk.

¶ 11    The first affidavit in support of Little's motion to dismiss Country Mutual's declaratory judgment action was by Madie Little. Madie's affidavit appears to be in direct response to the allegations of the complaint. In this affidavit, Madie expressed her confusion over Country Mutual's suit against her. She stated that she loaned a car to Little on the date of the accident. After the accident, Little was transported to a hospital by ambulance, and Little called Madie to pick him up from the hospital. Madie stated that she was present when Little told a police officer that a vehicle passed him and made

---

[1]We presume that the coverage Reed & Bruhn obtained for Little was a "medical payments" coverage—not the uninsured motorist benefits at issue in this case.

contact with the car he was driving before he swerved. She stated that he told the officer that the car involved was an older model vehicle with a chrome bumper.

¶ 12    The second affidavit filed in support of Little's motion to dismiss Country Mutual's complaint was Little's own affidavit. In his affidavit, he stated that he was the driver involved in the March 24, 2015, accident; that his vehicle was involved in a hit-and-run accident and that the vehicle that made contact with his vehicle was a late model vehicle possibly manufactured in the 1970s with large chrome bumpers; and that the vehicle made contact with the front end of Little's vehicle near the driver's side headlight and was not a sideswipe form of contact. Little also stated that he informed the Cahokia police officer who first arrived on the scene after the accident that another vehicle had struck his vehicle. He made the same statement to the Illinois State Police officer who interviewed him at the hospital. The Illinois State Police officer informed Little that she had not seen any paint transfer on the side of Little's vehicle consistent with a sideswipe. Little explained that he hired an attorney to represent him in obtaining insurance benefits to pay his medical bills, but that same attorney would not represent him in Country Mutual's declaratory judgment action. Little finally stated that he would attempt to provide larger photographs of the front-end damage to Madie's vehicle resulting from the collision on March 24, 2015.

¶ 13    At a hearing on all pending motions on May 10, 2016, Country Mutual's motion to enter a default judgment against Madie was granted. Little's motion to dismiss Country Mutual's complaint and his motion to allow introduction of exhibits (photographs of the

5

vehicle's damage) were both denied. Little's motion to file affidavits in support of his motion to dismiss was deemed moot.

¶ 14   On July 22, 2016, Little filed a second affidavit provided by Madie. The subject matter of this affidavit was the damage sustained on March 24, 2015, to Madie's vehicle. Madie stated that the damage depicted in the photographs "was not present before the accident of March 24, 2015." Attached to the affidavit were close-up photographs depicting the headlight cover damage.

¶ 15   An attorney for the Bradley Law Firm in St. Louis entered an appearance for Little on January 30, 2017. The case was apparently internally transferred at the Bradley Law Firm because on October 6, 2017, a different attorney entered her appearance on Little's behalf.

¶ 16   On February 4, 2019, Country Mutual filed its motion for summary judgment, arguing that the facts were not in dispute and established that a hit-and-run collision had not occurred, and therefore Little was not entitled to uninsured motorist benefits as a matter of law. In support of its motion Country Mutual cited to portions of three depositions. First, Country Mutual stated that Little's deposition testimony was potentially unreliable because just days after the deposition, Little sent a letter to his physician questioning why he had experienced a memory block about the accident during that deposition.[2] Country Mutual argued that since Little's deposition testimony was

_____

[2]In a letter dated April 17, 2017, Little asked his physician, Mounir Shenouda, M.D., about a recent episode of "memory block." Little wrote that, in a recent deposition, his "memory went completely blank as to the details of a[n] accident. I mean I could not remember the accident from beginning to end[—]not a thing[—]my mind went completely blank."

unreliable, the trial court should not use that testimony to find a question of fact barring summary judgment. Second, Country Mutual cited a responding paramedic's testimony that Little told him that he spun out and hit the concrete overpass—and had not mentioned that another vehicle was involved. Finally, the responding Illinois State Police officer, Erica Lavalle, testified that she found no paint transfer on Little's vehicle and therefore found no evidence to establish that another vehicle was involved in Little's accident.

¶ 17 Little, through his attorney, did not file a written response to the motion for summary judgment, and the court held its hearing on the motion on August 14, 2019. However, Little's attorney appeared at the hearing on Country Mutual's summary judgment. He advised the trial court that he joined the St. Louis firm one month prior to the hearing and that he had inherited the case from the previous attorney. When the trial court asked Little's attorney if there was any proof of involvement of another vehicle other than Little's deposition testimony, counsel indicated that he did not believe there was any other evidence. The trial court then found that based upon Little's letter to his physician, the trial court could not rely upon this potentially perjured testimony to find that there was a genuine issue of material fact. The court granted Country Mutual's summary judgment motion.

¶ 18 On August 23, 2019, Little entered a *pro se* appearance, and on August 27, 2019, he filed a motion to vacate the trial court's order of summary judgment. In his motion to vacate Country Mutual's summary judgment, he argued that it was premature to have entered summary judgment on the basis of his letter to his physician regarding the bout of

memory loss he experienced during his deposition. He explained that he was taking cold/flu medication and was experiencing fever at the time of the deposition, and just days after the deposition, his physician prescribed antibiotics. He stated that his memory loss was not permanent and that he had regained clarity of all details of the accident. He indicated that if Country Mutual were to obtain his later medical records, it would reflect an improvement on memory concerns he had expressed to his physician. He further argued that the testimony of Illinois State Police Officer Lavalle was incomplete as she had not been cross-examined about whether she had identified the damage to the headlight cover and whether that damage was consistent with the front-end contact Little has consistently stated had occurred. Furthermore, Little averred that, if asked in deposition, he and Madie would testify to a statement that Officer Lavalle made to them at the hospital. Officer Lavalle stated that the initial responding officer told her that, at the scene of the accident, Little said that a phantom vehicle had made contact with his vehicle. From the record on appeal, it does not appear that the trial court ruled on Little's motion to vacate the summary judgment.

¶ 19    On September 5, 2019, Little also filed a notice of appeal. On September 19, 2019, Little's attorney filed a motion to withdraw.

¶ 20                                II. ANALYSIS

¶ 21    Little appeals from the trial court's summary judgment order, arguing that there was a genuine issue of material fact. He argued that the trial court erred in basing summary judgment solely upon a finding that his deposition testimony had been called into question by his correspondence with his physician.

8

¶ 22    Section 2-1005(c) of the Code of Civil Procedure provides that a party is entitled to summary judgment as a matter of law if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." 735 ILCS 5/2-1005(c) (West 2018). If there are outstanding genuine issues of material fact, the trial court should deny a motion for summary judgment. *Koziol v. Hayden*, 309 Ill. App. 3d 472, 476 (1999). " 'A genuine issue of material fact precluding summary judgment exists where the material facts are disputed, or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts.' " *Monson v. City of Danville*, 2018 IL 122486, ¶ 12 (quoting *Adames v. Sheahan*, 233 Ill. 2d 276, 296 (2009)); see also *Koziol*, 309 Ill. App. 3d at 476.

¶ 23    Summary judgment is a drastic remedy and should not be granted unless the movant's right to judgment is unquestionable. *Monson*, 2018 IL 122486, ¶ 12 (citing *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004)); *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 357 (2000). The trial court must strictly construe all evidence in the record against the moving party and liberally in favor of the opponent. *Monson*, 2018 IL 122486, ¶ 12 (citing *Adams*, 211 Ill. 2d at 42); *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986); *Koziol*, 309 Ill. App. 3d at 476. Appellate courts review summary judgment orders on a *de novo* basis. *Monson*, 2018 IL 122486, ¶ 12 (citing *Barnett v. Zion Park District*, 171 Ill. 2d 378, 385 (1996)); *Myers v. Health Specialists, S.C.*, 225 Ill. App. 3d 68, 72 (1992).

¶ 24   We begin our analysis of this insurance coverage issue with a recitation of the language contained in Country Mutual's motor vehicle policy. At issue in this case is SECTION 2 of the Uninsured-Underinsured Motorists, Coverage U. The policy provides:

> "[**W**]**e** will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured or underinsured motor vehicle** because of bodily injury sustained by an insured and cause by an accident. The owner's or operator's liability for these damages must arise from the ownership, maintenance or use of the **uninsured or underinsured motor vehicle**."

All bold-faced terms are defined in section 2 of SECTION 2, Coverage U. Of importance to Country Mutual's contractual theory of nonliability is the definition of uninsured motor vehicle:

> "**Uninsured motor vehicle** means any type of **motor vehicle** \*\*\*
>
>  \*\*\*
>
>   b. which is a hit-and-run vehicle. A hit-and-run vehicle is one whose operator or owner cannot be identified and which hits
>     (1) **you** or any **relative**,
>     (2) a **motor vehicle** which **you** or any **relative** are **occupying**, or
>     (3) **your insured vehicle** causing bodily injury to the occupants. The **insured** must notify police within 24 hours of a hit-and-run accident and must submit a statement of the facts to **us** within 30 days \*\*\*."

¶ 25   Construction of an insurance policy involves a question of law, and therefore, our review is *de novo*. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 480 (1997); *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). The primary objective of a reviewing court is to give effect to the intent of the parties. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 362 (2006). We must review the language of the policy in total and construe the language utilized by the insurer by affording the language its plain and ordinary meaning. *United States Fire*

*Insurance Co. v. Schnackenberg*, 88 Ill. 2d 1, 5 (1981); *Valley Forge Insurance Co.*, 223 Ill. 2d at 363.

¶ 26    A court should not try to find an ambiguity in the language where none truly exists. *Schnackenberg*, 88 Ill. 2d at 5; *Valley Forge Insurance Co.*, 223 Ill. 2d at 363; *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 29-31 (2005). However, "[i]t is the insurer's burden to affirmatively demonstrate the applicability of an exclusion." *Pekin Insurance Co. v. Miller*, 367 Ill. App. 3d 263, 267 (2006). When an insurer relies upon exclusionary policy language to deny coverage, the language's application to the facts must be clear and free from doubt. *Cohen Furniture Co. v. St. Paul Insurance Co.*, 214 Ill. App. 3d 408, 412-13 (1991). In situations where insurance policy language is ambiguous or uncertain—in other words, subject to more than one interpretation—that language must be construed in favor of the insured and against the insurer who wrote the policy language at issue. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108-09 (1992).

¶ 27    We have reviewed the policy language and find that Country Mutual's use of the word "hits," in the phrase: "[a] hit-and-run vehicle is one whose operator or owner cannot be identified and which hits," clearly mandates that the phantom vehicle make physical contact with the insured's vehicle. While there could be another vehicle involved that resulted in the insured's accident, unless that other vehicle struck the insured's vehicle, there is no applicable uninsured motorist coverage.

¶ 28    While there is no question as to the contractual meaning of Country Mutual's uninsured motorist coverage in a hit-and-run accident scenario, we find that there were

11

facts not brought to the attention of the trial court judge when Country Mutual presented its motion for summary judgment. These facts are part of the common law record and consist of pleadings, an affidavit, and photographic exhibits filed by Little. At the time of the trial court's hearing on Country Mutual's motion for summary judgment, these pleadings, affidavits, and exhibits were in the court file and had not been stricken.

¶ 29    The hearing on Country Mutual's motion for summary judgment was held on August 14, 2019. On July 19, 2016, Little filed his response to Country Mutual's request for production of documents, which included photographs of the front-end damage to Madie's vehicle. In addition to the photographic evidence, Little also filed Madie's affidavit in which she stated that the front-end damage depicted in the photographs was not present before March 24, 2015. In Country Mutual's June 29, 2016, response to Little's motion to amend his counterclaim, Country Mutual argued that these same photographs were inappropriate because: "no proper foundation has been laid for the attached exhibits to be entered into evidence at the trial of this matter." From the record on appeal, there was no ruling made on Country Mutual's response. Furthermore, the case was not then at a trial setting. Country Mutual's argument would have been appropriate as an objection at trial or via a motion *in limine*, but at this point, Little still had plenty of time to provide foundational evidence about the identity of the photographer and the date or dates when the photographs were taken. Madie's affidavit provided confirmation (1) that the photographs were of her vehicle, (2) that this was the vehicle involved in the March 24, 2015, accident, and (3) that the damage to the headlight cover was not there before March 24, 2015.

¶ 30    We also note that much of Country Mutual's motion for summary judgment was premised upon Illinois State Police Officer Erica Lavalle's deposition testimony, in which she rendered her opinion that Little was fabricating the existence of the phantom vehicle. During the summary judgment hearing, the trial court judge was careful to ascertain the timeline involving Officer Lavalle, noting that there had to be a reason that Lavalle looked for paint transfer onto Little's vehicle. The trial court noted: "apparently he must have said something at the scene regarding this other vehicle because otherwise I would assume Officer Lavalle wouldn't have been checking for paint transfer or chrome residue. He must have said something then." Counsel for Country Mutual explained that she believed that Officer Lavalle went to the scene of the accident first, and then went to the hospital and interviewed Little. We find that Madie's affidavit filed on April 8, 2016, in response to Country Mutual's motion for a default judgment, contains the background to the questions asked by the trial court at the summary judgment hearing.[3] Madie was present when Officer Lavalle came to talk to Little at the hospital. Initially, Officer Lavalle had been at the scene of the accident and spoke to the responding local police officer. While still at the scene of the accident, Little informed the responding police officer that another vehicle had been involved and made contact with his vehicle. While Officer Lavalle may have her opinions about whether another vehicle was involved, there is absolutely nothing in the record indicating that she looked at the headlight cover.

---

[3]We note that during the May 10, 2016, motion hearing the trial court ruled that Little's motion to file affidavits was rendered moot. However, both affidavits had already been filed with the circuit clerk's office pursuant to section 2-1103(a) of the Code of Civil Procedure (735 ILCS 5/2-1103(a) (West 2012)), and thus are part of the common law record on appeal.

Instead, Officer Lavalle was intent on ruling out a phantom vehicle by ascertaining the lack of transfer paint.

¶ 31 Further, although there is evidence that Little was suffering from memory loss when he gave his deposition, there was also evidence that he informed both the responding officer and Officer Lavalle about the presence of another vehicle immediately after the accident, at which time there was no evidence he was suffering from memory loss. Little's statement to the initial responding officer about the involvement of another car that made contact with his predated the deposition testimony. He repeated this claim to Officer Lavalle, who was inclined to believe that the story was fabricated because she did not find a paint transfer. Regardless of Officer Lavalle's belief, that conversation predated the deposition. Madie will be able to testify that she heard Little and Officer Lavalle have this discussion at the hospital. In addition, Little will be able to testify about the Illinois Motorist Report he completed and filed with the IDOT shortly after the accident. That document indicated that the phantom vehicle made front-end contact with Little's vehicle. The Illinois Motorist Report clearly predated his deposition. Finally, Madie will testify that there was driver-side front-end damage to her vehicle that was not present prior to Little's accident. Although Little may be constrained by his deposition testimony he provided while he was suffering from memory impairment, the record nevertheless contains evidence supporting a genuine issue of material fact.

¶ 32 The party opposing summary judgment does not have to prove his case at that stage, but he "must provide some factual basis to support the elements" of his claim. *Bank Financial, FSB v. Brandwein*, 2015 IL App (1st) 143956, ¶ 40 (citing *Illinois State*

14

*Bar Ass'n Mutual Insurance Co. v. Mondo*, 392 Ill. App. 3d 1032, 1036 (2009)). "Mere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999).

¶ 33 As stated earlier, summary judgment is a drastic remedy and should not be granted unless the movant's right to judgment is unquestionable. *Monson*, 2018 IL 122486, ¶ 12 (citing *Adams*, 211 Ill. 2d at 42-43). Furthermore, we must construe the evidence against Country Mutual and in Little's favor. *Id.* (citing *Adams*, 211 Ill. 2d at 42). The focus of Country Mutual's claim that it was entitled to summary judgment was on proving that the phantom vehicle did not exist because there was no paint transfer on the driver side of Little's vehicle. Officer Lavalle's testimony was an important component of Country Mutual's defense. However, Little presented genuine issues of material fact even if his deposition testimony is discounted. We find that there was circumstantial evidence that could potentially establish that Little's vehicle was struck by a phantom vehicle on March 24, 2015. If Little's vehicle was struck by a phantom vehicle, then Country Mutual's policy exclusion would be inapplicable. Accordingly, we conclude that the trial court's order granting summary judgment was inappropriate at this stage of the case.

¶ 34                                III. CONCLUSION

¶ 35 We find that the entry of summary judgment by the St. Clair County circuit court was premature. Therefore, we reverse the judgment and remand for further proceedings.


¶ 36 Reversed and remanded.

15